```
                   IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF TEXAS
                            FORT WORTH DIVISION

JIM BRANKIN                         §
                                    §
VS.                                 §   CIVIL ACTION NO. 4:08-CV-666-Y
                                    §
TIME INSURANCE COMPANY, ET AL.      §
```

<u>ORDER GRANTING REMAND</u>

Pending before the Court is the Motion to Remand (doc. #9) filed by plaintiff Jim Brankin. After review, the Court concludes that defendant, Time Insurance Company ("Time"), has failed to establish improper joinder. Consequently, the Court will grant the motion to remand.

I. Background

This action was commenced in the 48th Judicial District Court, Tarrant County, Texas, in October 2008. (Doc. #1, Exhibit B, p.1.) In his petition, Brankin alleges that he applied for a medical insurance policy underwritten by Time d/b/a Assurant Health through defendant Glenda Petkus Insurance Agency ("Petkus") (collectively Defendants). (*Id.* at 2.) According to Brankin, at the time he applied for the policy he disclosed the fact that he had a pre-existing condition of ulcerative colitis to Elizabeth Jacoby, an insurance agent with Petkus. (*Id.*) Brankin contends he made disclosures based on the directions he received from Jacoby and Time. (*Id.*) Time then issued a policy on Brankin and Brankin timely paid the premiums for a year. (*Id.*)

At some point after the issuance of the policy, Brankin was diagnosed with liver cancer. (*Id.* at 3.) Brankin argues that Time has sought to rescind his policy and deny claims under the policy by asserting that his disclosures of his pre-existing ulcerative colitis condition were insufficient. (*Id.*) As result, Brankin filed this suit advancing claims of breach of contract, breach of duty, fraud, and negligent misrepresentation. (*Id.* at 3-5.)

Time removed the case to this Court in November based on diversity jurisdiction. Time is incorporated under the laws of Wisconsin with its principal place of business in Wisconsin. Brankin is a citizen of Texas. And while Petkus is also a citizen of Texas, Time asserts that removal is proper because Petkus was improperly joined. Brankin now seeks to have this case remanded to the state court, arguing that he has asserted viable claims against Petkus and, therefore, the joinder of Petkus was not improper.

II. Discussion

A. Removal and Remand

Title 28 U.S.C. § 1441(a) provides "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending. Section 1332 of title 28 creates original jurisdiction in

a federal district court where there is complete diversity among the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332. The improper joinder of a defendant who is a citizen of the forum state cannot prevent removal. *See Illinois C. R. Co. v. Sheegog*, 215 U.S. 308, 316 (1909).

A party raising a claim of improper joinder bears a heavy burden, in that it must demonstrate that there has been outright fraud in the plaintiff's pleading of jurisdictional facts or that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the non-diverse defendant. *See Sid Richardson Carbon & Gasoline Co. v. Interenergy Resources, Ltd.*, 99 F.3d 746, 751 (5th Cir.1996); *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 259 (5th Cir.1995); *B., Inc. v. Miller Brewing Co.*, 653 F.2d 545, 549 (5th Cir. Unit A 1981). "[T]he test for [improper] joinder is whether the defendant has demonstrated that there is *no possibility* of recovery by the plaintiff against [the non-diverse] defendant . . . ." *Smallwood v. Illinois Central R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (emphasis added).

A district court's improper-joinder inquiry is essentially the same as that performed when reviewing a motion to dismiss under rule 12(b)(6). *Id.* Further inquiry may be warranted in some circumstances. *See id.* In determining whether a defendant has satisfied the test for improper joinder, a court must "resolve any contested issue of material fact, and any ambiguity or uncertainty

3

in the controlling state law, in [the plaintiff's] favor." *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999).

B. Analysis

In its notice of removal, Time asserts that joinder of Petkus "does not destroy diversity because [Brankin] has no possibility of recovering against Petkus Insurance for any of the claims made in [Brankin]'s Original Petition." (Doc. #1 at 2, ¶4.) Time's arguments characterize Brankin's inclusion of Petkus as a ploy, common in the insurance context, to defeat diversity jurisdiction. Time cites *Ayoub v. Baggett*, 820 F. Supp. 298, 300 (S.D. Tex. 1993) which states that "given the relative financial positions of most [insurance] companies versus their . . . [agents], the only time an . . . [agent] is going to be sued is when it serves a tactical legal purpose, like defeating diversity." This skeptical observation was made in the context of a suit in which the plaintiff attempted to sue an insurance company and its employee based on the same acts. *Ayoub v. Baggett*, 820 F. Supp. 298, 299 (S.D. Tex. 1993). Because an insurance company necessarily acts through its employees, the court concluded that the employee was merely the "medium" for the unfair acts at issue and, therefore, joinder of the employee was improper. *See id.* at 299-300. In this case, Brankin has sued Time and an independent insurance agency and has made allegations as to both.

Time also cites *May v. United Services Association of America* and argues that an insurance agent may only be held liable based on the misrepresentation of a specific policy provision. In *May*, the Texas supreme court affirmed the intermediate appellate court's reversal of a judgment entered on a jury finding of negligence against an insurance agency, noting the plaintiffs "were not led wrongly to believe that their policy provided protection against a particular risk that was in fact excluded from the policy's coverage." *May v. United Servs. Ass'n of Am.*, 844 S.W.2d 666, 670 (Tex. 1992). In reaching this conclusion, the court noted that some courts have extended "agent liability beyond affirmative representations to failures to disclose some limitation in the policy's coverage," *id.* at 670 n.10, implying that it had yet to do so.

That only affirmative misrepresentations of specific aspects of a policy are actionable may be an accurate statement of Texas law. *See Moore v. Whitney-Vaky Ins. Agency*, 966 S.W.2d 690, 692 (Tex. App.--San Antonio 1998, no pet.) ("In the absence of some specific misrepresentation by the insurer or agent about the insurance, a policyholder's mistaken belief about the scope or availability of coverage is not generally actionable under the [Texas Deceptive Trade Practices Act]."). Even assuming as much, Time has not demonstrated Brankin has no possibility of recovery against Petkus. The court in *May* observed that "[i]t is

5

established in Texas that an insurance agent who undertakes to procure insurance for another owes a duty to a client to use reasonable diligence in attempting to place the requested insurance and to inform the client promptly if unable to do so." *May v. United Servs. Ass'n of Am.*, 844 S.W.2d 666, 669 (Tex. 1992). The court noted that agents had been held liable in cases where "the agent induced the plaintiff to rely on his performance of the undertaking to procure insurance, and the plaintiff reasonably, but to his detriment, assumed that he was insured against the risk that caused his loss." *Id.* at 669. Brankin alleges that he attempted to procure insurance through Petkus and that Petkus, through Jacoby, gave him "directions concerning what disclosures, if any, needed to be included about [Brankin's] pre-existing condition on his application." (Pet. at 2, ¶9.) Brankin's breach of duty, fraud, and misrepresentation claims are all based on his contention that the defendants represented to him that he was eligible for coverage when in fact his ulcerative colitis precluded him under the provisions of Time's policy.

Relatedly, Time argues that allegations as to "defendants" as a group are insufficient to state a claim against Petkus as an individual defendant. Time argues that Brankin's factual allegations relate to the handling and denial of claims in relation to Brankin's pre-existing condition and that coverage is governed solely by the policy's provisions. As a result, Time contends,

6

allegations regarding coverage could only be directed at Time. That is, Time insists that because the sufficiency of the disclosures was evaluated by Time, then the dispute is between only Brankin and Time. Time contends that the only factual allegation relating to Petkus in Brankin's petition deals with Brankin's disclosure of his condition to Jacoby. Further, Time insists that the petition contains no allegation that Jacoby failed to relay or that she improperly relayed information between Time and Brankin, or that Jacoby or Petkus were involved in the claims-handling process, or that Jacoby or Petkus misrepresented a policy provision.

In *Griggs v. State Farm Lloyds*, the United States Court of Appeals for the Fifth Circuit concluded that a petition's references to "Defendants" were not sufficient to state a claim against an insurance agent and, therefore, the agent had been improperly joined. *Griggs*, 181 F.3d at 699-702. The court explained its reasoning regarding general references to "Defendants," stating:

> [Plaintiff's] original and amended petitions name Lark Blum as a defendant, but allege no actionable facts specific to Blum. The only factual allegation even mentioning Blum merely states that "Defendants [sic], through its local agent, Lark Blum issued an insurance policy." The remainder of [Plaintiff's] pleadings refer to conduct by the "Defendants" that can in no way be attributed to Blum. Both [Plaintiff's] factual allegations and his articulation of his legal claims focus solely upon State Farm Lloyds' conduct in the processing and ultimate denial of his claim.

7

*Id.* at 699. Brankin points out that although his petition at times refers to "defendants," it also includes specific allegations regarding Petkus and Jacoby–-that Brankin disclosed to Jacoby, as an agent with Petkus, his pre-existing condition during the process of applying for an insurance policy with Time and that, despite his full disclosure to Jacoby he was told that he was eligible for coverage.

Moreover, as condoned by the Fifth Circuit in *Griggs*, Brankin has submitted summary-judgment evidence to further clarify his claims. *See Griggs*, 181 F.3d at 700 ("[A] federal court may consider summary judgment-type evidence such as affidavits and deposition testimony when reviewing a fraudulent joinder claim.") (quotations omitted). In his deposition, when asked about applying for the policy with Jacoby, Brankin states that Jacoby asked about pre-existing conditions and he informed her of his colitis. (Mtn. App. at 2, Brankin Depo. at p.19, lines 9-19.) At this point, to Brankin's "best recollection," Jacoby called Time while Brankin and his wife remained in her office. (*Id.* at p.20, lines 7-9.) For approximately an hour Jacoby spoke with Time representatives, relaying questions and answers between the representatives and Brankin. (*Id.* at p.20, lines 17-25; p.21-22, lines 1-7.) At the end of the conversation, Jacoby informed Brankin that he could answer "no" to whether he had been treated for colitis in the five years prior to applying for insurance. (*Id.* at p.24, lines 14-22.)

8

Thus, unlike *Griggs* and other cases cited by Time, Brankin's claims against Petkus rely on factual allegations specific to Petkus.

Time also argues that regardless of any representation made by Jacoby, Brankin has no claim against Petkus because, under Texas law, an insured has a duty to read his policy and is deemed to have knowledge of its terms. A review of the cases cited by Time in this regard demonstrates that this is simply an extension of Time's argument that only affirmative and specific misrepresentations by an insurance agent are actionable. For instance, in *Heritage Manor of Blaylock Prop. v. Petersson*, the court of appeals stated that the insured "had a duty to read the policy and, failing to do so, would be charged with knowledge of its conditions and coverage" in concluding that it was appropriate for a trial court to grant a directed verdict on claims based on an insurance agent's failure to explain policy terms. *See Heritage Manor of Blaylock Prop. v. Petersson*, 677 S.W.2d 689, 691 (Tex. App.--Dallas 1984, writ ref'd n.r.e.). Similarly, in *Garrison Contractors, Inc. v. Liberty Mutual Insurance Company* and *Ruiz v. Government Employees Insurance Company*, another Texas court of appeals concluded that an agent's failure to disclose or explain terms is not actionable. *See Ruiz v. Gov't Employees Ins. Co.*, 4 S.W.3d 838, 841 (Tex. App.--El Paso 1999, no pet.); *Garrison Contractors, Inc. v. Liberty Mutual Insurance Company*, 927 S.W.2d 296, 300 (Tex. App.--El Paso 1996) *aff'd by* 966 S.W.2d 482 (Tex. 1998). But Brankin does not rely on

Jacoby's failure to disclose or explain policy provisions to support his claims. Instead, Brankin alleges that Jacoby filled out the application on his behalf and, in doing so, after the issue of his pre-existing condition arose, spoke with Time representatives and then told Brankin that he was eligible for coverage despite a provision that appeared to exclude him based on his pre-existing colitis. These allegations are sufficient to state a claim under the Insurance Code. *See* TEX. INS. CODE ANN. § 541.061 (prohibiting misrepresentations related to an insurance policy).

Finally, Time argues that Petkus does not owe Brankin a fiduciary duty or a duty of good faith and fair dealing. As a result, Time maintains that Brankin has no breach-of-duty claim against Petkus. In his petition, Brankin claims a "bad faith breach of the insurer's duty." (Pet. at 3.) Brankin elaborates that this claim is based on "unfair trade practices." (*Id.*). Unfair trade practices are actionable under the Texas Insurance Code and Texas Deceptive Trade Practices Act regardless of the presence of any duty. *See* TEX. INS. CODE. ANN. §§ 541.051-062; *see also* TEX. INS. CODE ANN. § 541.151(2) (providing that a violation of the Texas Deceptive Trade Practices Act, TEX. BUS. & COM. ANN. § 17.46(b), is a violation of the Insurance Code); *see also Griggs*, 181 F.3d at 699.

Ultimately, Brankin alleges that he attempted to obtain a Time

insurance policy through Petkus and, after fully disclosing his pre-existing condition and filling out the application with the aid and advice of a Petkus employee, he was told he was eligible. When Brankin was diagnosed with cancer and attempted to make claims on the policy the claims were denied and the policy rescinded based on Time's assertion that Brankin had failed to properly disclose his pre-existing colitis. While Time may be responsible for the acts of denial of coverage and of recision, Brankin has made allegations that Petkus made representations regarding his eligibility which he relied on to his detriment.

III. Conclusion

In light of the foregoing, the Court concludes that Time has not carried its heavy burden in establishing that there is no possibility Brankin will recover from Petkus. As a result, Time has not established that Petkus was improperly joined. Accordingly, diversity jurisdiction does not exist in this case and Brankin's motion to remand is GRANTED.

SIGNED March 10, 2009.

*Terry R. Means*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE